IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISRAEL ARCE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 CV 00102 |
| | ) | |
| v. | ) | Judge Gary Feinerman |
| | ) | |
| TIMOTHY CARDOFF; DANIEL MURPHY & | ) | Magistrate Judge Finnegan |
| CHICAGO TRANSIT AUTHORITY | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Chicago Transit Authority (the "CTA") and Timothy Carduff ("Carduff"), by their attorney, Karen Seimetz, General Counsel and through the undersigned attorneys, submit this memorandum of law in support of their motion to dismiss Plaintiff Israel Arce's ("Plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

Plaintiff is a former CTA employee who was hired as a truck service chauffeur in 1998. First Amended Complaint ("Am. Compl."), Count I, ¶ 11. Plaintiff is Puerto Rican. Am. Compl., ¶ 3. Plaintiff suffered injuries on September 5, 1998; January 17, 2006; January 8, 2008; January 7, 2010; and November 21, 2011. Am. Compl., Count I, ¶ 32. In 1998, when returning from a work-related injury, Plaintiff's immediate supervisor, Timothy Carduff[1], and Carduff's supervisor, Daniel Murphy[2], assigned him to change tires rather than drive a truck. Am. Compl., Count I, ¶¶ 10, 14. A later injury, on January 7, 2010, resulted in part from driving a truck. Am. Comp. Count I, ¶ 18.

---

[1] Plaintiff names "Timothy Cardoff" individually in his Amended Complaint. However, the name is correctly spelled "Carduff." For ease and accuracy, CTA will refer to him as "Carduff."
[2] To CTA's knowledge, Plaintiff has not properly served Daniel Murphy.

At some point after his January 7, 2010 injury, Plaintiff was in "Area 605," a classification found in Plaintiff's Union's Collective Bargaining Agreement, for union employees injured on duty. Am. Compl., Count I, ¶ 19; Count II, ¶16. On November 1, 2012, Plaintiff signed a request for disability pension. Am. Compl., Count II, ¶ 17.

On February 4, 2014, Plaintiff filed his original Complaint. Neither CTA nor Carduff were served with the original Complaint. On February 10, 2014, Plaintiff filed his First Amended Complaint. In his First Amended Complaint, Plaintiff alleges violations of 42 U.S.C. § 1981 in three counts. In Count I, Plaintiff alleges CTA and Carduff discriminated against him based on his race, in violation of § 1981. In Count II, Plaintiff alleges CTA and Carduff constructively discharged him, in violation of § 1981. In Count III, Plaintiff alleges CTA and Carduff retaliated against him because he filed for Worker's Compensation benefits, in violation of § 1981. *See* Am. Compl. For the reasons described below, the Defendants move to dismiss Plaintiff's First Amended Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

When considering a 12(b)(6) motion, the court must assume all well-pleaded allegations in the complaint are true, and must construe them in a light most favorable to the plaintiff. *Frank Bros., Inc. v. Wisconsin Dept. of Transp.*, 409 F.3d 880, 884-85 (7th Cir. 2005). The court is not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). To survive Rule 12(b)(6) scrutiny, the Court must consider whether the allegations "plausibly suggest that plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citation omitted). If the allegations fall short of this standard, "the plaintiff pleads himself out of court." *Id.*

A motion to dismiss should be granted if the complaint fails to state a claim that entitles the plaintiff to relief. *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir. 1989). In deciding this motion, the Court can consider any documents incorporated or referenced in the complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999). The Court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim." *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998).

## ARGUMENT

Plaintiff's First Amended Complaint should be dismissed in its entirety. First, many of Plaintiff's allegations are barred by the four-year statute of limitations imposed on actions under § 1981. Second, Plaintiff's First Amended Complaint fails to meet the federal pleading standards under Fed. R. Civ. P. 12(b)(6). Third, Plaintiff does not have standing for his claims that CTA breached the collective bargaining agreement between his union and CTA, nor does the Court have jurisdiction over such a claim. Fourth, the Amended Complaint fails to properly plead a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Fifth, Plaintiff has failed to exhaust his administrative remedies regarding his accommodation claims. Additionally, Plaintiff cannot recover punitive damages from Defendant Chicago Transit Authority. Finally, qualified immunity protects individual defendant Carduff from suit. For the foregoing reasons, as described more fully below, the CTA moves to dismiss Plaintiff's First Amended Complaint in its entirety.

### I. PLAINTIFF'S CLAIMS PRIOR TO FEBRUARY 4, 2010 ARE TIME-BARRED

Claims under 42 U.S.C. § 1981 are governed by the four-year statute of limitations for acts of Congress. *See* 28 U.S.C.A. § 1658; *Jones v. R.R. Donnelly & Sons, Co.*, 531 U.S. 369

(2004). *See also*, *Rainey v. United Parcel Svc., Inc.*, 543 Fed. Appx. 606, 608 (7th Cir. 2013); *Dandy v. United Parcel Svc., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004); *Midwest Fence Corp. v. U.S. Dept. of Transp.*, 2011 WL 2551179, at *14 (N.D. Ill. 2011). Plaintiff's initial Complaint was filed on February 4, 2014, and therefore any claims he makes that accrued prior to February 4, 2010, are barred by the statute of limitations.

Plaintiff's Amended Complaint includes numerous allegations that fall outside the statute of limitations period. In Count I, Plaintiff alleges he received a heavily laborious task after returning to work form an injury in 1998. Am. Compl., Count I, ¶ 14. He makes several allegations in relation to a "pick" on or about October 28, 2009. Am. Compl., Count I, ¶¶ 19, 20, 21, and 22. He also alleges that Carduff, driven by racial animus, assigned Plaintiff to a truck with a broken seat on January 7, 2010, and that Carduff knew about this injury. Am. Compl., Count I, ¶¶ 24, 34. He further alleges that on January 8, 2010, a particular truck was assigned to another employee. Am. Compl., Count I, ¶ 23. Plaintiff alleges that Carduff demanded Plaintiff return to work full duty following injuries on September 5, 1998; January 17, 2006; January 8, 2008; and January 7, 2010. Am. Compl., Count I, ¶¶ 32, 39. He claims Carduff made a bet in November 2009 that Plaintiff would not last in his position until Christmas. Am. Compl., Count I, ¶ 41[3]. Plaintiff alleges Carduff discriminated against him job assignments in 2005 and 2007, and did not show him an accommodation request in 2009. Am. Compl., Count I, ¶¶ 36, 43-45.

In Count II, Plaintiff alleges that on October 28, 2009 Carduff returned Plaintiff to work without any restrictions, and that Carduff did not bring to his attention an accommodation request form in 2009. Am. Compl., Count II, ¶ 22, 25. In Count III, Plaintiff claims that someone at CTA created an "Accommodation Request" on October 19, 2009. Am. Compl., Count III, ¶

---

[3] Plaintiff makes a similar claim in Count II, ¶ 27, but does not state a date.

23. Plaintiff's allegations in Count III go to accidents on January 8, 2009, in February 2009, and on January 7, 2010. Am. Compl., Count III, ¶18. He also alleges that Carduff possessed an offer of accommodation on October 19, 2009 and he was not offered a modified work accommodation on October 28, 2009. Am. Compl., Count III, ¶ 24-26, 27.

Plaintiff does not make any allegation that any of these violations were ongoing, except for the conclusory and vague allegations that they happened "continuously." Am. Compl., Count I, ¶ 14. However, Plaintiff offers no evidence that these were continuing violations, and indeed the nature of Plaintiff's allegations – that he was assigned to work on a specific, or to change tires – describe discrete incidents. Am. Compl., Count I, ¶¶ 14, 22, 45. Because the claims alleged in Count I, ¶¶ 14, 19-24, 32, 36, 39, 41, 43-45, Count II, ¶¶ 13, 22, 25, and Count III, ¶¶ 18-19, 23-27 were not filed within the statute of limitations for §1981 claims, they should be dismissed with prejudice. *Rainey* 543 Fed. Appx. 606 at 608.

## II. PLAINTIFF'S CLAIMS DO NOT MEET FEDERAL PLEADING STANDARDS

Plaintiff's First Amended Complaint falls short of the minimum pleading standards under Fed. R. Civ. P. 12(b)(6), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Amended Complaint fails to give the CTA sufficient notice of what Plaintiff's claims are and the grounds upon which they rest. *Concentra Health Servs., Inc.*, 496 F.3d at 776-77, *quoting Twombly*, 550 U.S. at 544. Because Plaintiff fails to plead enough facts that could place CTA on notice that it is liable for the misconduct alleged, Plaintiff's First Amended Complaint should be dismissed. *See Iqbal*, 556 U.S. at 678.

Plaintiff does not state sufficient facts to support his claims of racial discrimination, constructive discharge, or retaliation. In numerous paragraphs, Plaintiff fails to provide dates or even general time frames for various allegations, making it impossible for CTA to have fair

notice of his claims. Am. Compl., Count I, ¶¶ 14, 15, 17, 18, 27-31, 33, 35, 37, 38, 40, 42, 46, 47; Count II, ¶¶ 12, 20, 21, 23-24, 26-27, 29, 31-32, 35; Count III, ¶¶ 19, 22, 30. Plaintiff alleges that he was subject to a more strenuous assignment following his work-related injury than were white employees, but fails to when this happened. Am. Compl., Count I, ¶ 15. Plaintiff states that "certain vehicles" were defective and that this impacted "certain" employees adversely, without giving a timeframe or naming the other employees. Am. Compl., Count I, ¶ 17. Plaintiff claims work injuries to his lower back on an unspecified date. Am. Compl., Count I, ¶ 18. Plaintiff's allegations regarding Area 605 and the employee "pick" are insufficient in that they do not allege: a specific time for the "pick," names of White employees allegedly treated differently and the timeframes in which this occurred, and the names of other Puerto Rican employees allegedly treated differently than White employees and dates when this alleged discrimination occurred. Am. Compl., Count I, ¶¶ 27-31. Plaintiff alleges, without a timeframe, that Carduff had authority to determine whether injured employees would be offered work accommodations. Am. Compl., Count I, ¶ 33. Plaintiff also alleges, without stating a time period or date, the average overtime pay for truck service chauffeurs. Am. Compl., Count I, ¶ 47. Plaintiff makes allegations about an interactive process for accommodation and accommodation request without stating specifics of timeframe or other salient details. Am. Compl., Count I, ¶¶ 34, 35, 37, 38, 40, 42; Count II, ¶ 21, 23, 24, 26, 31, 32. In Count II, Plaintiff alleges he got advice on an unspecified date from a union attorney, without stating the attorney's name. Am. Compl., Count II, ¶ 29. Plaintiff alleges in Count III that Carduff knew of Plaintiff's "acceptance of the salutary benefits of the Worker's Compensation statute" without stating what these benefits were, when he was receiving them, or when Carduff allegedly knew of them. Am. Compl., Count III, ¶ 19.

Similarly, the First Amended Complaint is silent on non-conclusory facts that would give CTA notice of Plaintiff's claims. Specifically, Plaintiff states that he is Puerto Rican, and that Carduff's motivation to discriminate against Plaintiff based on his race "has manifested itself systematically and continuously," but does not give provide facts to turn his claim from conceivable to plausible. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiff's conclusory allegations of "systematic discrimination" fall short due to the lack of specificity and at least some evidence that other Puerto Rican employees were treated similarly and discriminatorily. Am. Compl., Count I, ¶ 14; Count II, ¶ 35. Plaintiff also alleges that someone, though he does not state who, motivated by a discriminatory desire, retaliated against Plaintiff for aiding his unnamed union steward at an unspecified time. Am. Compl., Count III, Count ¶ 22. He claims that at some unspecified time Carduff told White employees of overtime availability but did not tell Plaintiff or other unidentified Puerto Rican employees of this. Am. Compl., Count I, ¶ 46. He alleges that "supervisors" inquired about his ethnicity, but does not state which supervisors, and states, without a date, that Carduff referred to him as a scammer. Am. Compl. Count II, ¶12. Plaintiff does not name the Puerto Rican employees to whom he alleges Carduff was hostile, or the White employees who were not "subjected to interference with their collective bargaining contract with the CTA" as Plaintiff alleges he was. Am. Compl., Count II, ¶ 20; Count III, ¶ 30. Plaintiff does not state how CTA and Carduff interfered with his own contract rights. Plaintiff fails to plead sufficient details to provide CTA with adequate notice of his claims, and, for these reasons, Plaintiff's First Amended Complaint should be dismissed.

**III. PLAINTIFF'S BREACH OF CONTRACT CLAIM IN REGARDS TO "PICKING" AND "SENIORITY" RIGHTS SHOULD BE DISMISSED WITH PREJUDICE**

    **A.    Plaintiff Lacks Standing To Bring This Claim.**

A litigant's standing is one component of a court's subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999), *citing Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted).

Here, Plaintiff lacks standing to file a law suit alleging a breach of his "picking" and "seniority" rights in Counts I and II because he, as an individual, is not a party to the Collective Bargaining Agreement ("CBA") in question. Am. Compl., Count I, ¶¶ 16, 19-21; Count II, ¶¶ 18-20, 34. Also, because Carduff is not a party to the CBA, all allegations in regards to Carduff's violation of Plaintiff's "picking" and "seniority" rights should be dismissed with prejudice. Am. Compl., Count I, ¶¶ 16, 19-21; Count II, ¶¶ 18-20, 34. Only CTA and the State and Municipal Teamsters and Chauffeurs Union, Local 726, International Brotherhood of Teamsters, Chauffeurs, and Warehousemen and Helpers of America (collectively referred to as "Local 700") are parties to the CBA. *See* p. 1of Wage and Working Conditions Agreement between the CTA and Local 700, attached hereto as Exhibit 1.[4]  A party is required to exhaust the mandatory grievance and arbitration procedures under a CBA before seeking judicial review. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163 (1983); *McCoy v. Maytag Corp.,* 495 F.3d 515, 524 (7th Cir. 2007); *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 165.

---

[4] *Menominee Indian Tribe*, *supra*, 161 F.3d at 456 (7th Cir. 1998) (Court may consider document exhibits to motion to dismiss where plaintiff's complaint refers to documents and they are central to his claims); *Anderson v. Simon*, 217 F.3d at 474-75) (court may take judicial notice of matters of public record).

The CBA between CTA and Local 700 explicitly provides for a grievance and arbitration procedure. Ex. 1 at 34-36. In order for Plaintiff to allege that his "picking" and "seniority" rights were violated, he must first allege that he attempted to exhaust his administrative remedies under the CBA, but Local 700 failed to fairly represent him. *See Stahulak v. City of Chicago*, 291 Ill. App. 3d 824, 832 (1st Dist. 1997). If Plaintiff were to make those allegations against Local 700, the proper venue would be at the Illinois Labor Relations Board ("ILRB" or "Board") with Local 700 as the defendant, not in federal court against CTA and the individual defendants. *Cessna*, 296 Ill. App. 3d at 165-166.

The only allegation Plaintiff makes in regards to communicating with a Local 700 representative is that he sought the advice of a Local 700 attorney who advised Plaintiff that he could lose his benefits if he did not accept disability retirement. Am. Compl., Count II, ¶ 29. Plaintiff makes no allegations that Local 700 failed in its duty of fair representation. Thus, Plaintiff's claims in Counts I and II relating to his "picking" or "seniority" rights, or any claim arising from the CBA should be dismissed with prejudice because Plaintiff lacks standing to sue, and Carduff is not a party to the CBA.

  **B.**  **The Illinois Labor Relations Board Has Exclusive Jurisdiction Over Disputes Regarding Collective Bargaining Agreements in Illinois.**

This Court also lacks subject-matter jurisdiction over Plaintiff's claims about his "picking" and "seniority" rights because they require an interpretation of the applicable CBA at issue in this case. Exclusive jurisdiction for the interpretation of the CBA lies with the ILRB. Pursuant to the Illinois Public Labor Relations Act ("ILRA" or "Act"), 5 ILCS § 315/5 (2000), it is the Board's responsibility to first hear any dispute flowing from a collective bargaining agreement that an employee represented by a union, such as Plaintiff, seeks to bring against a

9

public entity, such as CTA. *See Cessna* 296 Ill. App. 3d at 165-66 ("It is well-settled that an employee subject to a collective bargaining agreement must at least attempt to exhaust contractual remedies before resorting to a judicial remedy.").

The Illinois Appellate Court in *Cessna* held that the plaintiff's contractual claims belonged before the Board, not the circuit court, and that a failure to dismiss the contractual claims against the defendant would "undermine the Act's stated purpose and frustrate the legislature's intent to provide a uniform body of law in the field of labor-management relations" and could "lead to forum shopping and inconsistent judgments in similar factual settings." *Id*. at 168. Therefore, the ILRB has exclusive jurisdiction over Plaintiff's allegations that his "picking" and "seniority" rights were violated, and this Court should dismiss them with prejudice.

## IV. PLAINTIFF FAILS TO PROPERLY PLEAD A CLAIM FOR MUNICIPAL LIABILITY IN COUNTS I AND II

Plaintiff fails to state a viable claim for municipal liability under § 1981. It is well established that a municipality cannot be held vicariously liable under Section 1981 for the acts of its employees. *See Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 733-35 (1989). Rather, municipal liability under § 1981 requires a plaintiff to allege that a "violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Id.* at 735-36; *McCormick v. City of Chicago*, 203 F.3d 319, 324 (7th Cir. 2000). Such requirement "distinguishes acts of the *municipality* from acts of *employees* of the municipality, and thereby makes clear that municipality liability is limited to action for which the municipality is actually responsible." *Waters v. City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009) (internal quotation and punctuation marks omitted) (quoting *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)) (emphasis in *Estate of Sims*).

Municipalities may be held liable only for acts which the municipality has officially sanctioned or ordered. *Fiorenzo v. Nolan*, 965 F.2d 348, 350 (7th Cir. 1992). The municipality must be the "moving force" behind the alleged constitutional injury before it may be held liable. *Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir. 1997). Therefore, to state a basis for municipal liability under § 1981, a plaintiff must allege that the violation of his rights was caused by: (1) an express municipal policy; (2) a widespread municipal practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority. *McCormick*, 230 F.3d at 324-25. To support his municipal liability claim, Plaintiff alleges a widespread municipal custom and practice theory, which he fails to properly plead. *See* Am. Compl., Count I, ¶¶ 13, 14; Count II, ¶ 14.

Plaintiff's Amended Complaint is void of any allegations sufficient to state a claim under a municipal custom and practice theory to establish municipal liability under § 1981. While Plaintiff alleges that unidentified Puerto Rican employees were treated differently at unspecified times by not being allowed to pick a truck assignment that would accommodate their unidentified capabilities, Plaintiff does not allege that these unidentified Puerto Rican employees needed or requested accommodation. Am. Compl., Count I, ¶ 30. Plaintiff's bare conclusions fail to provide CTA with sufficient notice of the supposed basis of Plaintiff's municipal liability claim. *See Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995) ("[A]lthough plaintiffs can plead conclusions, the conclusions must provide the defendant with at least minimal notice of the claim."); *see Zubeck*, 2006 WL 1843396, at *5. Given the pleading deficiencies of Plaintiff's Amended Complaint, it is apparent that Plaintiff fails to plead a set of facts that entitle him to relief. Fed. R. Civ. P. 8(a)(2).

Likewise, Plaintiff fails to name the Puerto Rican employees he refers to, and also fails to state when the alleged discrimination against the other unidentified Puerto Rican employees occurred. Am. Compl., Count I, ¶ 30. Plaintiff also alleges that "Carduff [was] hostile to Puerto Rican employees in the Utility Service department and discriminatorily refused to allow *Plaintiff* to return to work because Plaintiff was Puerto Rican." Am. Compl., Count II, ¶ 20. Again, while Plaintiff alleges that Carduff was hostile to Puerto Rican employees, he fails to name the unidentified Puerto Rican employees he refers to and fails to state when and in what way Defendant Carduff was allegedly hostile towards Puerto Rican employees, including Plaintiff. Plaintiff alleges only that he was discriminated against by not being allowed to return to work.

As this Court noted in *Freeman v. Fairman*,

> In the absence of direct evidence such as a written policy, the usual way to show the existence of a governmental policy or custom is by showing a series of bad acts inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned the actions.

916 F. Supp. 786, 790 (N.D. Ill. 1996) (internal quotation marks and citation omitted). Further, "[a] plaintiff's own isolated experiences are insufficient to establish custom." *Zubek v. City of Chicago*, 2006 WL 1843396, at *5 (N.D. Ill. July 5, 2006). The only alleged "bad acts" referenced in Plaintiff's First Amended Complaint relate to his "own isolated experiences." "Thus, Plaintiff's own isolated experiences cannot establish a widespread practice or custom. *Id.* ("Absent allegations of discrimination in addition to Plaintiff's own experiences, the court cannot infer the existence of a widespread practice or custom."). Accordingly, and because Plaintiff has failed to properly plead municipal liability, his First Amended Complaint should be dismissed.

### V. PLAINTIFF'S CLAIMS REGARDING CTA'S FAILURE TO ACCOMMODATE PLAINTIFF OR TO GIVE PLAINTIFF LIGHT DUTY SHOULD BE DISMISSED

In evaluating a Rule 12(b)(6) motion, the Court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n. 1 (7th Cir. 2012). The ADA, like Title VII, requires a claimant to file a charge of discrimination with the IDHR and EEOC, and also receive a right-to-sue letter before filing a federal lawsuit. *See* 42 U.S.C. § 12117(a); *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) ("[T]he ADA's enforcement provision expressly incorporates § 2000e - 5 of Title VII."); *Easton v. Coll. of Lake Cnty.*, 584 F.Supp.2d 1069, 1075 (N.D. Ill. 2008). The exhaustion rule "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved . . . ." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Plaintiff does not attach a right-to-sue letter to his First Amended Complaint, nor does he allege that he received a right-to-sue letter. *See generally*, Am. Compl. Therefore, Plaintiff's claims regarding CTA's failure to accommodate his alleged disability and his allegations that CTA denied to give him light duty assignments should be dismissed for failure to exhaust administrative remedies. *Zubek v. City of Chicago*, 2006 WL 1843396, at *5 (N.D. Ill. July 5, 2006).

### VI. PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES FROM THE CTA

Plaintiff's request for punitive damages should be stricken because such damages cannot be recovered against a municipality. Am. Compl., Count I, ¶ 51(g); Count II, ¶38(k); Count III, ¶

35(g). Municipal corporations, such as the CTA, are immune from punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (noting that Illinois has not waived immunity for punitive damages for municipalities); *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1134 (7th Cir. 1987) (noting that the City of Chicago as a municipality cannot be held liable for punitive damages). Accordingly, Plaintiff's request for punitive damages against the CTA should be stricken from his First Amended Complaint.

### VII. QUALIFIED IMMUNITY DEFENSE

"Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012). As a general matter, the doctrine of qualified immunity can shield public officials like Carduff from civil liability if he can demonstrate that he was performing a discretionary function and that a reasonable manager in his position would have believed that, at the time he acted, his actions were within the bounds of law. *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007). "Although it is ordinarily an affirmative defense, a qualified immunity defense may be raised in a motion to dismiss." *Annan v. Vill. Of Romeoville*, 2013 WL 673484, at *3 (N.D. Ill. Feb. 25, 2013) (citing *McDonald ex rel. McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992)); *see also Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009). "To overcome a defense of qualified immunity at the pleading stage, the complaint must contain sufficient factual allegations to show that the defendant's conduct violated a constitutional right and that the right was clearly established at the time of the alleged violation." *Engel v. Buchan*, 710 F.3d 698, 708 (7th Cir. 2013) (citing *Pearson*, 555 U.S. at 231).

It is unclear in Plaintiff's First Amended Complaint whether he is suing Carduff in his individual or official capacity. Am. Compl., Count I, ¶¶ 21, 24, 27, 48. Nonetheless, as explained

in Section II, above, Plaintiff fails to allege sufficient facts to show that Carduff violated a constitutional right, and he fails to sufficiently allege that the right was clearly established at the time of the alleged violation. *See* Am. Compl., Count I, ¶¶ 15, 27, 28, 29, 30, 31, 46, 47; Count II, ¶¶ 12, 20, 27, 29; Count III, ¶¶ 19, 23, 30. For example, while Plaintiff states that he is Puerto Rican, and that Carduff's motivation to discriminate against Plaintiff based on his race "has manifested itself systematically and continuously," Plaintiff does not provide facts to turn his claim from conceivable to plausible. *See McCauley* 671 F.3d at 616. Plaintiff fails to state how and when Carduff was hostile towards Plaintiff and other unidentified Puerto Rican employees. Am. Compl., Count II, ¶ 20; Count III, ¶ 30.

As explained more fully in Section II above, Plaintiff's First Amended Complaint does not contain sufficient factual allegations to show that Carduff violated Plaintiff's constitutional right, or that the right was clearly established. *Engel*, 710 F.3d at 708. As such, Plaintiff's First Amended Complaint, as filed, does not overcome Carduff's qualified immunity defense.

## CONCLUSION

WHEREFORE, Defendants Chicago Transit Authority and Timothy Carduff respectfully request that this Court grant their motion and dismiss Plaintiff Israel Arce's First Amended Complaint in its entirety, with prejudice.

DATED: April 28, 2014

Respectfully submitted,

KAREN SEIMETZ
General Counsel
By: /s/  *Piemengie Hamisu*

Chicago Transit Authority
567 West Lake Street, 6th Floor
Chicago, Illinois 60661
Phone: 312-681-3173 | Fax: 312-681-2995
phamisu@transitchicago.com
pkhatkhate@transitchicago.com

Piemengie Hamisu, Senior Attorney
Priya Khatkhate, Associate Attorney

15