IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISRAEL ARCE | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 14 cv 00102 |
| v. | ) | |
| | ) | Hon. Gary Feinerman |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| TIMOTHY CARDUFF, and | ) | Hon. Sheila M. Finnegan |
| DANIEL MURPHY, | ) | |
| | ) | |
|     Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Chicago Transit Authority ("CTA"), Timothy Carduff ("Carduff") and Daniel Murphy ("Murphy") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6) submit this Reply Brief in further support of their Motion to Dismiss Plaintiff Israel Arce's Second Amended Complaint, stating as follows:

**I. PLAINTIFF MAY NOT AMEND HIS COMPLAINT THROUGH HIS RESPONSE**

Plaintiff's attempts to amend his complaint through his Response are wholly improper and should be denied. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (Internal citations omitted). Plaintiff acknowledges in his Response that his § 1981 claims against defendants Carduff and Murphy should have been brought pursuant to § 1983. Docket Entry ("D.E.") #61, Sec. I.A. Additionally, Plaintiff seeks to amend Counts 2, 3, 4, 5 and 6 of his Second Amended Complaint ("SAC"), brought pursuant to Title VII. D.E. #61, Sec. VIII. It is clear that Plaintiff recognizes his failure to exhaust administrative remedies regarding the allegations in these counts. Plaintiff's improper attempts to cure the deficiencies of

his SAC through his Response should be denied. *Id.* As Plaintiff has twice amended his complaint, further amendment should not be permitted and the Court should dismiss Plaintiff's complaint with prejudice. *See Klein v. Curran*, 2014 WL 5023486, at *4 (N.D. Ill. Oct. 7, 2014) (dismissing plaintiff's complaint with prejudice and denying further amendment because plaintiff had twice amended his complaint) (copy attached as Exhibit A).

## II. PLAINTIFF'S TIME-BARRED ALLEGATIONS SHOULD BE DISMISSED WITH PREJUDICE

As explained fully in Defendants' opening brief, Plaintiff's SAC contains a number of allegations that are time-barred, both by the two-year statute of limitations imposed by §§ 1981 and 1983, and by the 300- and 180-day time limits imposed by the rules governing actions before the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). *See* D.E. #55, Secs. I.A and I.B. In his Response, Plaintiff argues first, that his hostile work environment claims in Counts 1, 2 and 3 and implied in Counts 7 and 8 allow for the inclusion of allegations outside the relevant limitations periods as long as an act contributing to the hostile work environment is alleged within the limitations period. *See* D.E. #55, Sec. I.A. Second, Plaintiff argues in his Response that under the continuing violation theory, the Court may consider allegations pursuant to Title VII outside of the 300-day limitations periods prior to his administrative charges because his claims are based on a hostile work environment. As explained below, because Plaintiff has failed to sufficiently plead a hostile work environment or a continuing violation, his argument fails and his allegations are time-barred. Accordingly, this Court should dismiss with prejudice Plaintiff's claims relying on time-barred allegations.

### A. <u>Plaintiff Fails to Sufficiently Plead a Hostile Work Environment</u>

Plaintiff does not plead sufficient facts to allege a plausible hostile work environment claim. A plaintiff must establish that his working environment was both objectively as well as subjectively offensive to state an actionable hostile environment discrimination claim. *Logan v. Kautex Textron North America*, 259 F.3d 635, 641 (7th Cir. 2001). To determine whether the environment is hostile, courts examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In order to make an actionable claim for hostile work environment pursuant to § 1981 in Count 1 of his SAC, Plaintiff must allege that (1) his work environment was both subjectively and objectively offensive; (2) race was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) a basis for CTA's liability. *Yancick v. Hannah Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). It is the context of the entire workplace, and not the discrete acts of individuals, that make a hostile work environment. *Id.* (citing *Vance v. Ball State. Univ.*, 646 F.3d 461, 470-71 (7th Cir. 2011)).

As relates to Counts 2 and 3 of Plaintiff's SAC, a work environment cannot be described as hostile for purposes of Title VII unless a reasonable person would find it offensive and the Plaintiff actually perceived it as hostile. *Haywood v. Evergreen Motor Cars, Inc.*, No. 02 C 6408, 2003 WL 21418248 *6 (N.D. Ill. June 18, 2003) (copy attached as Exhibit B) (citing *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000)). These standards "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Haywood*, 2003

3

WL 21418248, at *6 (citations omitted). "A workplace must be 'hellish' before it is actionable as a hostile environment. *Id*. (citing *Logan,* 259 F.3d at 641).

As explained fully in Section II of Defendants' opening brief, Plaintiff's allegations fall far short of the criteria for a properly pled hostile work environment claim. Plaintiff does not allege facts sufficient to raise his claim above a speculative level. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2006). His conclusory allegation that a "hostile work environment met plaintiff on his first day" and allegations that Murphy and Carduff had information about Plaintiff's prior worker's compensation injury and allegedly called Plaintiff names and "advised coworkers that plaintiff's name was Egypt" simply do not rise to the level of a hostile work environment. SAC, Count 1, ¶ 32. *See Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 997 (7th Cir. 2002) ("The mere utterance of a racial epithet that engenders offensive feelings does not sufficiently affect the conditions of employment to create a hostile work environment."); *Cowan v. Prudential Insur. Co. of Am.*, 141 F.3d 751, 758 (7th Cir. 1998) (while conduct might, at times, amount to being "crude, sometimes offensive, and inappropriate," this type of behavior was not subjectively severe or pervasive enough to rise to the level of hostile).

Plaintiff's additional allegations that upon his pick of a certain truck, presumably in or around the end of 2009, Carduff took that truck out of service for maintenance, that Murphy on one occasion assigned him to a certain task upon his return to work from an injury in 1998, and that he was assigned to drive a front-loader truck, do not help Plaintiff meet the pleading standards for a hostile work environment. SAC, Count 1, ¶¶ 39, 49, 64. Indeed, none of the smattering of disjointed incidents Plaintiff alleges over more than two decades amount to the "hellish" environment of a hostile workplace. *Haywood*, 2003 WL 21418248, at *6; *see also Kruger v. Principi*, 420 F. Supp. 2d 896 (N.D. Ill. 2006) ("More is needed than a laundry list of

incidents that may have upset the plaintiff to establish a hostile work environment . . . ."); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) ("handful of comments spread over months" are not sufficiently severe or pervasive to constitute harassment). Therefore, Plaintiff's argument that allegations outside of the applicable limitations periods are properly before the Court as part of his hostile work environment claims must fail.

### B. Plaintiff's Allegations Are Not Continuing Violations

Plaintiff does not properly allege a continuing violation. The continuing violation doctrine allows a plaintiff to seek relief for a time-barred act by tying it to an act within the limitations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). The Seventh Circuit recognizes generally three theories of continuing violation: (1) cases involving hiring or promotion in which the employer's decision-making process takes place over a lengthy period of time; (2) cases in which the employer has an express, open discriminatory policy; and (3) cases where the plaintiff alleges his employer has followed a covert practice of discrimination over a period of time, evidenced by a series of discrete, allegedly discriminatory acts. *Id.* at 565. Although Plaintiff does not state under which theory he alleges a continuing violation, the allegations in his SAC appear to fit only under the third theory. The main inquiry of this third theory is whether the alleged acts as pled are related closely enough to constitute a continuing violation, or whether they are isolated and discrete acts which should be considered individual violations. *Id.* (internal quotations and citations omitted).

When considering this, courts weigh whether the acts involve the same type of discrimination, whether they are in the "nature of an isolated work assignment or employment decision," and the degree of permanence of the acts. *Id.* (quoting *Berry v. Bd. of Supervisors of*

*L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)). The Seventh Circuit has stressed the significance of the third factor.

> What justifies treating a series of separate violations as a continuing violation? Only that it would have been unreasonable to require the plaintiff to sue separately on each one. In a setting of alleged discrimination, ordinarily this would be because the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment.

*Selan*, 969 F.2d at 565-66 (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989)). Here, Plaintiff alleges he was subject to a racially hostile work environment "on his first day" at CTA. SAC, Count 1, ¶ 32. Plaintiff never alleges that the acts were somehow cumulative in nature or that they only occurred to him as rising to an actionable level after a certain period of time or number of alleged acts. *See* D.E. #44.

The mere inclusion of alleged acts within the statutory limitations period does not automatically cure the lack of timeliness in Plaintiff's SAC. Plaintiff blithely states, without providing adequate factual support, that his claims are based on a "pervasive harassing hostile environment." D.E. #61, Sec. I.B. As explained more fully above, in Sec. I.A., Plaintiff has not properly alleged a claim of hostile work environment. Plaintiff cites to *Nat'l R.R. Corp. Ass'n v. Morgan*, 536 U.S. 101 (2002), as the sole support of his argument that his time-barred Title VII allegations are cured by joining them to related claims subject to a timely EEOC charge, and that the Court must consider these claims. D.E. #61, Sec. I.B. However, the Northern District of Illinois, in interpreting *Morgan* stated that in contrast to hostile work environment claims, the "continuing violation doctrine … does not apply to discrete acts of discrimination that can be pinpointed to a particular day." *Kraus v. Shinseki*, 846 F.Supp.2d 936, 948 (N.D. Ill. 2012). All of the discriminatory acts Plaintiff alleges are discrete occurrences, not subject to the continuing violation theory as analyzed by the Seventh Circuit. Nor do they, taken as a whole, rise to the

level of pleading a hostile work environment. For these reasons, and those stated more fully in Defendants' opening brief, Plaintiff's hostile work environment claims must fail and should be dismissed with prejudice. Likewise, his time-barred claims should also be dismissed with prejudice.

### III. PLAINTIFF'S CLAIMS DO NOT MEET FEDERAL PLEADING STANDARDS AND SHOULD BE DISMISSED

Plaintiff argues in his Response brief that when paragraphs of his SAC are taken together or read in conjunction, they adequately set forth a series of acts that meet federal pleading standards. Plaintiff's SAC is a sprawling 45-page document with 11 separate counts.[1] *See* D.E. #44. The allegations contained therein are repetitive and confusing. It is incumbent upon Plaintiff to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See also Standard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2012) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). While Plaintiff need not prove his case in his pleadings, he must at minimum provide notice to Defendants of his claims. *See Id.* at 799. Though Plaintiff's SAC comprises a lengthy set of allegations, these allegations fall woefully short on the salient details necessary to meet federal pleading standards. *Id*.

For example, Plaintiff alleges that he discovered in January 2014 that Murphy and Carduff had concealed the existence of an October 19, 2009 accommodation offer. However, Plaintiff does not give a date in January 2014 when his rather sudden and fortuitous "discovery" was made, nor how he made the discovery, or what about the discovery led him to conclude that Murphy and Carduff had any hand in concealing it. *See* D.E. #61, Sec. I.A.; SAC, Count 1, ¶ 56.

---

[1] Adding to the confusion, Plaintiff's SAC contains two separate counts marked Count 8. Thus, though Plaintiff's last count is marked "Count 10," there are actually 11 counts in Plaintiff's SAC.

Moreover, Plaintiff cites to a Northern District of Illinois case[2] for the proposition that his statute of limitations should actually begin on his § 1981 and § 1983 claims from the date he "discovered" the allegedly long-hidden accommodation offer. D.E. #61, Sec. 1.A.; *Mohr v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of City of Chicago*, 993 F. Supp. 1155, 1158 (N.D. Ill. 1998). In *Mohr*, the Plaintiff's date of discovery was the date she was demoted. *Id*. In the case at bar, there is no explanation given for why January 2014 at large should be taken as the date of discovery and therefore the beginning of Plaintiff's limitations period for this particular claim.

As explained more fully in Defendants' opening brief, Plaintiff does not state sufficient facts to support his claims of racial, national origin and disability discrimination; constructive discharge; retaliation; or intentional or negligent infliction of emotional distress. *See* D.E. #55, Sec. II. Plaintiff fails to plead sufficient details to provide CTA with adequate notice of his claims and Plaintiff's SAC should therefore be dismissed with prejudice.

### IV. COUNTS 9 AND 10 FOR EMOTIONAL DISTRESS SHOULD BE DISMISSED

Plaintiff's claims for negligent and intentional infliction of emotional distress should be dismissed with prejudice for three reasons. First, Plaintiff's claims accruing prior to January 7, 2012 should be dismissed as time-barred, as stated more fully in Defendants' opening brief. D.E. #55, Sec. III.A. Second, Plaintiff's allegations simply do not to rise to the level of extreme and outrageous conduct required for intentional infliction of emotional distress ("IIED"), nor does he plead the negligence or physical injury required for recovery for negligent infliction of emotional distress ("NIED"). D.E. #55, Sec. III.B.

---

[2] Plaintiff cites to "Mohr v. CPS 933 F. Supp 1155 (ND Il 1998)," without any pincite. Defendants were unable to find that case, but did locate *Mohr v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of City of Chicago*, 993 F. Supp. 1155, 1158 (N.D. Ill. 1998); Defendants assume that Plaintiff intended to cite this case.

Third, Plaintiff relies on entirely the same allegations on which he bases his racial, national origin and disability discrimination, constructive discharge and retaliation claims pursuant to Title VII. *See* SAC, Counts 2, 3, 4, 5, 6. The same alleged acts which form the basis of his Title VII claims also form the basis of his claims IIED and NIED, in violation of Illinois law. Under these circumstances, Plaintiff's IIED and NIED claims are pre-empted by the Illinois Human Rights Act and should be dismissed. *Geise v. Phoenix Co. of Chicago,* 159 Ill.2d 507, 639 N.E.2d 1273, 1277 (Ill.1994).

Where a party alleges a tort claim under Illinois law that is "inextricably linked" to a civil rights claim, "there is no independent basis for imposing liability" pursuant to Illinois tort law and the tort claim must be dismissed. *Geise,* 159 Ill.2d at 639; *see* 775 ILL. COMP. STAT. 5/8-111(C) (providing that "except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth" in the Illinois Human Rights Act). This rule holds true where there is a complete factual overlap between IIED and NIED claims and a federal Title VII claim. *Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 493 (1997); *see also Quantock v. Shared Marketing Serv., Inc.*, 312 F.3d 899, 906 (7th Cir. 2002) (affirming dismissal of plaintiff's IIED claim where that claim was based on the same facts as her Title VII claim).

Here, Plaintiff's IIED and NIED claims incorporate nearly every allegation made in support of his Title VII claims. *See* SAC, Counts 2, 3, 4, 5, 6, 9 and 10. The face of Plaintiff's SAC displays an overlap between his civil rights claims and his emotional distress claims. As such, his only avenue of recovering the damages sought in these claims is through his Title VII claims. *Jansen*, 123 F.3d at 493; *see also Eruteya v. City of Chicago*, No. 04 C 1482, 2005 WL 563213, at *8 (N.D. Ill. Mar. 9, 2005) (where Plaintiff's IIED claim relied exclusively on her

9

national origin and race discrimination allegations, the IIED claim provides "no independent ground for relief" and must be dismissed) (attached as Exhibit C); *Johnson v. Chicago Bd. of Educ.*, No. 00 C 1800, 2002 WL 1769976, at *4 (N.D. Ill. Aug. 1, 2002) (collecting cases) (attached as Exhibit D). Plaintiff's emotional distress claims fail as a matter of law and should be dismissed with prejudice.

### V. PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES FROM CTA

In his Response, Plaintiff concedes that he cannot recover punitive damages from CTA. D.E. #61, Sec. VIII. As such, CTA's motion that the Court dismiss with prejudice Plaintiff's request to recover punitive damages from CTA should be granted.

### VI. DEFENDANTS' QUALIFIED IMMUNITY DEFENSE STANDS

In an attempt to support his argument against Defendants' qualified immunity defense, Plaintiff misstates Defendants' argument and incorrectly analyses one of their supporting cases, *Annan v. Vill. of Romeoville*, 2013 WL 673484, at *3 (N.D. Ill. Feb. 25, 2013) (citing *McDonald ex rel. McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992)) (copy attached to CTA's opening brief, D.E. #55-5); *see also Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009). Specifically, Plaintiff incorrectly states that "[Defendants] acknowledge[] that its claim of qualified immunity is premature and is to be raised as an affirmative defense." D.E. #61, Sec. VII. Rather, in its opening brief, Defendants argue, "although it is ordinarily an affirmative defense, a qualified immunity defense *may be* raised in a motion to dismiss." D.E. #55, Sec. VII (emphasis added). Nowhere in their opening brief do Defendants acknowledge that their qualified immunity defense is premature.

Contrary to Plaintiff's claim that the *Annan* court only addressed the probable cause defense presented by the defendants, both the probable cause and the qualified immunity

10

defenses were addressed by the *Annan* court. *Annan* at *3. *Annan* reinforces the doctrine that the defense of qualified immunity shields public officials such as defendants Carduff and Murphy from civil liability and it shows that the doctrine of qualified immunity can be raised in a motion to dismiss. D.E. #55, Sec. VII.

Notably, Plaintiff does not deny that Defendants Carduff and Murphy are public officials, subject to the defense of qualified immunity. Rather, Plaintiff argues that their conduct of allegedly calling Plaintiff outside of his name was so egregious that no reasonable person could have believed that it would not violate clearly established rights. D.E. #61, Sec. VII. Plaintiff's argument fails. First, as concerns Murphy, Plaintiff's SAC is devoid of any allegation that Murphy called Plaintiff outside of his name. Second, while Plaintiff alleges that Carduff called him outside of his name, Plaintiff does not claim in his SAC that Carduff's conduct of allegedly calling him outside of his name was so egregious that no reasonable person could have believed that it would not have violated clearly established rights. Plaintiff cannot modify his SAC through his Response. *See Car Carriers, Inc., v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Similarly, Plaintiff's attempt to modify count 8b of his SAC through his Response by arguing that he had a property interest in his job also fails. *Id*. Moreover, as explained above, Plaintiff's allegations are conclusions and formulaic recitations, which are not plausible on their face. *Twombly*, 550 U.S. at 555.

As such, Defendants' qualified immunity defense should stand because Plaintiff does not allege sufficient facts to show that defendants Carduff and Murphy's conduct violated any of Plaintiff's constitutional rights nor that the right violated was clearly established at the time of the alleged violation. *Engel v. Buchan*, 710 F.3d 698, 708 (7th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

## VII. CTA WITHDRAWS ITS ARGUMENTS REGARDING PLAINTIFF'S PICKING AND SENIORITY RIGHTS BECAUSE PLAINTIFF CLARIFIES THAT HE DOES NOT BRING ANY SUCH ALLEGATIONS

As stated in CTA's opening brief, it was unclear whether Plaintiff alleges in his SAC that Defendants violated his picking and seniority rights and based on this uncertainty, CTA advanced arguments as to why any such allegations should be dismissed. D.E. #55, Sec. VI. As Plaintiff has clarified that he is not alleging a violation of his picking or seniority rights, or any rights stemming from the Collective Bargaining Agreement between Plaintiff's Union and CTA ("CBA"), CTA withdraws its arguments regarding Plaintiff's picking or seniority rights.

Notwithstanding CTA's withdrawal of such arguments, Plaintiff's allegations that defendants Murphy and Carduff discriminated against him by not allowing him to pick or for any reason related to the CBA fail because they are time-barred. *See* Sec. II, *supra*.

## VIII. PLAINTIFF'S CLAM ALLEGING A VIOLATION OF THE ADA SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6)

In his Response, Plaintiff makes two arguments regarding his ADA claim. D.E. #61, Secs. IV-V. Plaintiff argues that (1) his ADA claim should stand because two cases defendants cite were decided prior to the 2008 Amendments to the ADA, and (2) his allegations survive a motion to dismiss because they are written in a manner "that a reasonable person could certainly follow this course of passages and find the allegations both credible and precise." D.E. #61, Secs. IV-V. Plaintiff's arguments fail.

It is immaterial that some of the cases cited in CTA's opening memorandum were decided under the ADA because the amendments to the ADA did not change the federal pleading requirements for a disability discrimination claim. *See Becker v. Elmwood Local Sch. Dist.,* No. 3:10 CV 2487, 2012 WL 13569, at *9 (N.D. Ohio Jan 4, 2012) (citing 6th Circuit cases relying on pre-amendment law for the *prima facie* elements of an ADA discrimination claim) (copy

attached as Exhibit E); *Fleck v. Wilmac Corp.,* No. 10 - 05562, 2011 WL 1899198, at *4 (E.D. Pa. May 19, 2011) (citing Third Circuit cases from 1998 and 1996 for its recitation of the *prima facie* elements of an ADA discrimination claim) (copy attached as Exhibit F). Therefore, it appears that the *prima facie* elements of an ADA discrimination claim remain the same under the ADA Amendments Act of 2008 ("ADAAA").

Moreover, while the ADAAA promotes broad coverage, "the definition of disability in [the ADAAA] shall be construed in favor of broad coverage of individuals under this chapter, *to the maximum extent permitted by the terms of this chapter*." 42 U.S.C. §12102(4)(A) (emphasis added). Essentially, while the 2008 Amendments to the ADA may have reduced the threshold for categorizing a medical condition as a disability, the Amendments do not alter the required federal pleading standards and certainly do not excuse Plaintiff's failure to plead essential elements, such as *how* he was substantially limited from performing his job duties.

Plaintiff incorrectly states that paragraphs 27 and 28 of Count 4 of his SAC state what Plaintiff's job was and the duties he could or could not perform. D.E. #61, Sec. V. While paragraph 27 lists the activities allegedly limited by Plaintiff's physical impairments, nothing in Count 4 speaks to Plaintiff's job duties as a Truck Chauffeur or how his alleged physical impairments limited the performance of his job duties. *See* SAC, Count 4.

Moreover, being able to "follow a course of passages" does not equate to the federal requirement that Plaintiff allege sufficient facts that are plausible on their face. *Iqbal*, 556 U.S. at 679. In fact, the "course of passages" Plaintiff refers to merely contain formulaic recitations and conclusions, which fail to give Defendants sufficient notice of Plaintiff's allegations. *Id*. at 681 (citing *Twombly*, 550 U.S. at 555).

13

In response to Defendants' argument that Plaintiff's SAC lacks allegations about Plaintiff's job duties and which of those duties he could perform with or without an accommodation, Plaintiff states Defendants "can easily discern what the claim is with respect to driving a truck and the disabilities list [sic] by Arce." (D.E. 61, p. 9). Plaintiff's argument in this regard is nonsensical: clearly, Defendants *cannot* discern the facts underlying Plaintiff's ADA claim. Plaintiff is required to provide sufficient allegations to put Defendants on notice of the claims brought against Defendants. To accept Plaintiff's conclusory statement that his claims are "easily" discernible – or require Defendants to speculate as to what aspects of Plaintiff's job he could or could not perform or what accommodation Plaintiff sought – is prejudicial to Defendants and should not be countenanced. (D.E. #55, Sec. IV).

Because Plaintiff fails to respond in any meaningful way to the allegations in CTA's Motion to Dismiss, Plaintiff has waived any argument he may have against CTA's argument that he failed to plead a legal disability under the ADA. D.E. #55, Sec. V; s*ee Central States, SE & SW v. Midwest Motor Express,* 181 F.3d 799, 808 (7th Cir. 1999). As such, Plaintiff's ADA claim fails, and should be dismissed with prejudice.

IX. **PLAINTIFF'S TITLE VII, FAILURE TO ACCOMMODATE, ADA AND/OR ADAA CLAIMS NOT RAISED AT THE IDHR SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

In three short sentences, Plaintiff responds to Defendants' argument that Plaintiff may not bring claims that were not included in his IDHR/EEOC Charges. D.E. #55, Sec. IV; D.E. #61, Sec. IV. Plaintiff's position is that his claims not previously raised at the IDHR or EEOC are properly before this Court because he filed an IDHR Charge. D.E. #61, Sec. IV. Plaintiff either misunderstands the argument raised by Defendants, or simply fails to respond to it.

As argued by Defendants, Plaintiff's Title VII discrimination and retaliation allegations brought against Carduff and Murphy should be dismissed with prejudice because such claims cannot be brought against individuals. D.E. #55, Sec. IV. In the event Plaintiff brings these claims against CTA, they should also be dismissed with prejudice for failure to exhaust administrative remedies. *Id*. Plaintiff has therefore waived any failure to exhaust arguments he may have by not responding to Defendants' arguments in this section. *See Cent. States, SE & SW v. Midwest Motor Express,* 181 F.3d 799, 808 (7th Cir. 1999).

While not responding to Defendants' arguments, Plaintiff moves this Court to grant him leave to re-plead this portion of his SAC. Aside from the impropriety of attempting to amend his SAC via his response, Plaintiff's request should not be granted because he has had ample opportunity to amend his SAC. There is no newly discovered document that would justify Plaintiff's motion to amend his SAC through his Response brief. *See Car Carriers, Inc.,* 745 F.2d at 1107; *Klein*, 2014 WL 5023486 at *4. Moreover, as fully explained in Defendants' opening brief, "allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." D.E. #55, Sec. IV. As such, all of Plaintiff's Title VII, failure to accommodate, ADA or ADAA claims not raised at the IDHR should be dismissed with prejudice for failure to exhaust administrative remedies.

## X. CONCLUSION

WHEREFORE, Defendants Chicago Transit Authority, Timothy Carduff and Daniel Murphy, respectfully request that this Honorable Court grant their motion and dismiss with prejudice Plaintiff Israel Arce's Second Amended Complaint in its entirety, and grant Defendants any other relief the Court deems appropriate.

| | |
|---|---|
| DATED: December 19, 2014 | Respectfully submitted, |
| | By: /s/ *Piemengie Hamisu* |
| Chicago Transit Authority | Piemengie Hamisu, Senior Attorney |
| 567 West Lake Street, 6th Floor | Priya Khatkhate, Associate Attorney |
| Chicago, IL 60661 | |
| T: 312.681.3173 \| F: 312.681.2995 | |
| phamisu@transitchicago.com | |
| pkhatkhate@transitchicago.com | |