**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ISRAEL ARCE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 14 C 00102 |
| CHICAGO TRANSIT AUTHORITY, | ) ) ) | Judge Gary Feinerman
Magistrate Judge Finnegan |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On June 29, 2015, Defendant Chicago Transit Authority (the "CTA") deposed Charlotte Arce, spouse of Plaintiff Israel Arce, based upon Plaintiff's Rule 26(a) disclosure that Mrs. Arce is a witness with relevant knowledge of his claims in this case.[1] At the conclusion of her deposition, Mrs. Arce reserved signature. On August 25, 2015, she signed and certified sixty-seven changes to her deposition answers. The CTA filed a "Motion to Strike the Errata Sheets for Charlotte Arce's Deposition" on September 29, 2015. (Doc. 132).[2] The motion asks that the errata changes be stricken in their entirety because they are untimely and beyond the scope of Rule 30(e)'s allowance of changes in "form or substance." For the reasons described below, the Court denies the CTA's motion without prejudice.

---

[1] Following the district judge's ruling on the CTA's Motion to Dismiss (Doc. 102), the remaining claims are solely against the CTA, for discrimination based on race, national origin, and disability under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, 42 U.S.C. § 1983, and the Fourteenth Amendment's Equal Protection Clause.

[2] For ease of reference, unless otherwise specified, page numbers for all briefs and exhibits are drawn from the CM/ECF docket entries at the top of the filed document.

**DISCUSSION**

The CTA's timeliness and scope-of-changes arguments rest on Federal Rule of Civil Procedure 30(e)(1). The Rule provides that, upon request by a deponent or a party before a deposition is completed, "a deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed R. Civ. P. 30(e). The Court considers the two arguments in turn.

**I. Timeliness**

The CTA first argues that Mrs. Arce did not complete her changes within the thirty-day deadline. Mrs. Arce was deposed on June 29, 2015. (Doc. 132-1, at 1). McCorkle Court Reporters recorded the deposition, and it prepared a certified letter on July 14, 2015 that stated that the deposition transcript was "now ready for reading and signing as required by law." (Doc. 132-2). Mrs. Arce was invited to make an appointment to read and sign the deposition within twenty-eight days from the date of the letter. (*Id.*). According to Mrs. Arce's declaration, she received the letter on July 25, 2015. (Doc. 137-1). The CTA agrees that this is the date when Mrs. Arce received notice, thus triggering the thirty-day period under Rule 30(e). (Doc. 137, at 2; Doc. 150, at 1).[3]

---

[3] The CTA previously argued that Mrs. Arce received notice on July 14, 2015 (the date of the letter), prompting the Court to request a copy of the United States Postal Service return receipt. (Doc. 143). The return receipt is stamped with a date of July 22, 2015, but the stamped date is not in the "date of delivery" section of the form. (Doc. 150-1). Instead, illegible writing appears in that section. In its brief, the CTA agreed that the writing evidences receipt on July 25, so the Court adopts this date in absence of disagreement.

In her declaration, Mrs. Arce represents that she "began [her] review and certification on August 21, 2015 and completed the review and errata sheets on August 24, 2015." (Doc. 137-1). However, it was not until the next day, August 25, 2015, that she appeared before a notary public and signed a statement certifying that "the foregoing transcript (with the errata sheets attached) accurately states the questions asked and the answers given by me as they now appear." (Doc. 132-3, at 1). Contrary to what Plaintiff argues, it is this latter date that the Court must consider when determining whether Mrs. Arce complied with Rule 30(e)'s thirty-day requirement. *Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297, 298-99 (N.D. Ill. 2005); *see also Sanny v. Trek Bicycle Corp.*, No. CIV. 11-2936 ADM/SER, 2013 WL 1912467, at *13 (D. Minn. May 8, 2013) ("Once the transcript or recording is available, the deponent or party making the request has 30 days to review *and submit* the corrections.") (emphasis added).

In *Welsh*, the court considered the plaintiff's argument that she needed only to finish (not certify) her changes within thirty days. In determining that Rule 30 requires certification and submission of the modifications to the deposition officer (*i.e.*, the court reporter) within that period, rather than the deponent's mere completion of desired changes, the court reasoned:

> It was not enough for her to fill out an errata sheet and date it at the bottom as she claimed she did on May 7th. First, until the actual certification on page 226 of the transcript was executed, notarized, and returned to the court reporter, the changes were obviously preliminary, and could have been withdrawn or modified. Phrased differently, until that time, the "changes" envisioned by the Rule existed only in the contemplation of Ms. Welsh and the defendants necessarily remained unaware of them, and the potential for surprise and abuse that the 30–day rule was designed to eliminate persisted.

3

*Id.* at 300-01.

To bolster its reading of the Rule, the court relied upon the incoherence of the plaintiff's interpretation with the purpose of the Rule's time limit – namely, eliminating "difficulties court reporters had in obtaining signatures . . . in a timely way." *Id.* at 300. Under the plaintiff's interpretation, the court reasoned, parties would be able to delay (whether by days or indefinitely) the ultimate certification and still comply with the deadline – a result that would render the time limit nugatory since the deposition might remain unfinished for a lengthy period. *Id.* at 301. Moreover, the court observed that "the few courts that have considered the issue have held that the changes must be *submitted* to the court reporter within the prescribed period." *Id.* (emphasis added) (citing *Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1994); *Havey v. Tenneco, Inc.*, No. 98 C 7137, 2000 WL 198445, at *1 (N.D. Ill. Feb. 11, 2000); *Workman v. Chinchinian*, 807 F. Supp. 634, 644 (E.D. Wash. 1992)).[4]

Mrs. Arce did not sign and notarize the changes until August 25, 2015, and this is, therefore, the pertinent date for calculating timeliness of her errata sheets. The CTA points out that August 25 is 31 days past July 25. (Doc. 150, at 1-2). Although true, the Court disagrees that this makes her changes untimely because the CTA's computation overlooks Federal Rule of Civil Procedure 6. When any rule states a period for taking some action in a number of days, the deadline is calculated by "exclud[ing] the day of the event that triggers the period[.]" Fed. R. Civ. P. 6(a). Thus, when calculating the deadline for Rule 30(e) changes, the deadline is thirty days from the day *following* the

---

[4] The court also rejected the plaintiff's alternative argument that the thirty-day period did not begin to run until she received the court reporter's notice from her attorney, which was four days after her attorney received it. *Id.* at 300.

court reporter's notice to the deponent. For Mrs. Arce, the deadline was thirty days after July 26: August 25, 2015. Accordingly, the record demonstrates that she timely completed her changes on the final day of Rule 30(e)'s period.

## II. Scope of Changes: Boundary of "Form or Substance"

Before turning to changes that Mrs. Arce made to her deposition testimony, the Court explores the scope of allowable changes under Rule 30(e).

### A. Lack of Uniformity

As noted, witnesses have thirty days after receiving notice of the availability of their deposition transcripts in which, "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e). Courts disagree about the scope and nature of changes permissible under the Rule. *See* 7 James William Moore et al., *Moore's Federal Practice*, ¶ 30.60 (3d ed. 2013); Christopher Macchiaroli & Danielle Tarin, *Rewriting the Record: A Federal Court Split on the Scope of Permissible Changes to a Deposition Transcript*, 3 Fed Cts. L. Rev. 1, 3 (2009); Gregory A. Ruehlmann, Jr., *"A Deposition Is Not A Take Home Examination": Fixing Federal Rule 30(e) and Policing the Errata Sheet*, 106 Nw. U. L. Rev. 893, 899-904 (2012); Richard G. Stuhan & Sean P. Costello, *Rule 30(e): What You Don't Know Could Hurt You*, 17 No. 1 Prac. Litigator 7, 11-14 (2006).

Some courts have adopted a narrow interpretation of Rule 30(e), allowing only the correction of transcription errors so that the transcript accurately reflects what the deponent actually said. The case most often cited in this line of authority is *Greenway v. International Paper Co.*, 144 F.R.D. 322 (W.D. La. 1992). There, the court said:

> [t]he purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Id.* at 325; *see also Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (quoting *Greenway*).[5]

Other courts have construed Rule 30(e) broadly to allow changes in form and substance beyond transcription errors and with no limits. One of the early cases adopting this approach was *Lugtig v. Thomas*, 89 F.R.D. 639 (N.D. Ill. 1981) (Will, J.). The court observed that "[t]he language of the Rule places no limitations on the type of changes that may be made by a witness before signing his deposition" and, similarly,

---

[5] One commentator who examined the history of the rule dating back to the original Equity Rule 67, and the twin Equity Rules 50 and 51 that succeeded it, concluded that Rule 30 was never intended to allow for more than the correction of transcription errors:

> Appeals to the plain language of Rule 30(e) are incomplete and misleading without reference to the Rule's transcriptive focus. Read in historical context, the Rule appears to be distinctly clerical, ill-equipped—and never intended—to embrace substantive changes. Although its wording has changed over time, Rule 30(e) has retained one modest but steady focus: the who, how, and what of accurate transcription. The Rule is meant to secure an accurate representation of what was said, leaving to another day (and frequently to the mechanisms of Rule 56) the question of the meaning and implication of the deposition content for purposes of material factual disputes. The common understanding of Rule 30(e) has moved far afield from that mild ambition, giving us the confusion and circuit split we know today. Read in light of its history, the Rule clearly embraces a transcriptive focus.

Ruehlmann, Jr., *supra*, at 915. Rule 30(e)'s counterpart in Illinois state court, Supreme Court Rule 207(a), was amended to limit corrections to transcription errors because the "potential for testimonial abuse" had "become increasingly evident as witnesses submit[ted] lengthy errata sheets in which their testimony [was] drastically altered . . . ." Ill. Sup. Ct. R. 207(a), Rules Committee Comment to Paragraph (a) (1995).

does not "require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes." *Id.* at 641. The court noted the advantage of this approach: because a witness is free to change testimony at trial, it is efficient to allow broad changes under Rule 30(e) so that the opposing party, duly notified by the errata sheets, can earlier seek discovery on the changed testimony and avoid "surprises at trial." *See id.*; *see also Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1406-07 (N.D. Ill. 1993) (citing *Lugtig* for the proposition that changes may be contradictory and the reasons for them unconvincing).

### B. Seventh Circuit's Decision in *Thorn* and Analogy to the "Sham Affidavit Rule"

Years later, in *Thorn v. Sunstrand Aerospace Corp.*, 207 F.3d 383 (7th Cir. 2000), the Seventh Circuit declined to construe Rule 30(e) as broadly as the court in *Lugtig*. *Thorn* was an age discrimination case brought by two employees, Thorn and Curran, who were laid off as part of a reduction in force ("RIF"). During a deposition, the defendant employer's department head was asked "what criteria his superiors had told him to employ in making selections for the RIF and he answered that he was to decide 'which people did we feel have the longest-term potential for those whose product lines we were eliminating.'" *Id.* at 388. Curran later pointed to this testimony as evidence of age discrimination, asserting that "longest-term potential" was a synonym for "youngest." *Id.* After this, the department head submitted an errata sheet with a modified answer. Claiming that his answer was "garbled," he changed the answer to say that he was to decide "'which people were associated with the products that had the longest-term potential versus those whose product lines we were eliminating.'" *Id.*

7

Eventually, the defendant moved for summary judgment. According to the lower court's decision, Curran then urged the court to reject the change to the deposition testimony reflected in the errata sheet. The lower court declined to do so, concluding that plaintiff's construction of the original answer was "strained" and did "not make sense." *Thorn v. Sunstrand Corp.*, No. 95 C. 50099, 1998 WL 668641, at *6-7 (N.D. Ill. Sept. 22, 1998). Further, in granting summary judgment in favor of the defendant, the court said it did not "need" to consider the department head's amended answer "because when his depositional testimony is considered as a whole, it is clear [he] did not consider an employee's 'long-term potential.'" *Id.* at *6.

On appeal, Curran again argued that the witness should not have been permitted to change his deposition testimony. The Seventh Circuit disagreed. The court first observed that what the witness "tried to do, whether or not honestly, was to change his deposition from what he said to what he meant." *Thorn*, 207 F.3d at 389. Quoting the language from *Greenway* that "a deposition is not a take home examination," the court remarked that this was a "questionable basis for altering a deposition." *Id.* Nonetheless, the court held that the change was permitted under Rule 30(e) since the rule "authorizes 'changes in form *or substance*'." *Id.* (quoting Fed. R. Civ. P. 30(e)) (emphasis in original).

In so holding, however, the court noted that the witness "could not remove the issue from the jury by altering the transcript of his deposition" since "fortunately the rule requires that the original transcript be retained . . . so that the trier of fact can evaluate the honesty of the alteration." *Id.* Indeed, for this reason, the court reasoned that the defendant "didn't help itself by [the witness] altering his deposition. If at trial [plaintiff]

8

Curran tried to use [the witness's] garbled phrase to impeach his testimony, or as an admission, [the witness] could explain what he meant, and it would be for the jury to decide whether the explanation was truthful."[6]  *Id.*

Despite allowing the witness to change his deposition testimony given Rule 30(e)'s "form or substance" language, the court declared that certain contradictory changes in errata sheets are "impermissible," just as such changes are barred under the sham affidavit rule.  The court reasoned:

> We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, e.g., *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532-33 (7th Cir. 1999); *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168-69 (7th Cir. 1996); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995); *Schiernbeck v. Davis*, 143 F.3d 434, 437-38 (8th Cir. 1998); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997); cf. *Sullivan v. Conway*, 157 F.3d 1092, 1096-97 (7th Cir. 1998), that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a "not."

*Id.*  In *Bank of Illinois*, a leading case referenced by analogy in *Thorn,* the Seventh Circuit said "[w]e have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."  75 F.3d at 1168.  The reason for such a rule is that "[i]f such contradictions were permitted . . . the 'very purpose of the summary judgment motion— to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.'"  *Id.*  (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.

---

[6] There was not to be a trial, however, since the court affirmed the grant of summary judgment, finding that "[s]ince younger employees tend to be more mobile than older ones, there is no basis for an inference that employers interested in the long-term potential of an employee prefer young to old."  *Thorn*, 207 F.3d at 389.  Without this inference, the court said, plaintiff Curran lacked a case.  *Id.*

9

1985)). Hence, when deciding summary judgment motions, courts must disregard contradictory affidavit statements that are material to the motion and that create a "sham" factual dispute. *See id.* In *Thorn*, the court apparently reasoned by analogy that, just as parties may not avoid summary judgment by contradicting their deposition testimony in a later affidavit that creates a sham factual dispute, they should not be permitted to do so by changing deposition testimony in an errata sheet. Instead, when considering whether to grant or deny summary judgment, courts must disregard "sham" factual disputes stemming from such contradictory changes.[7]

To determine whether a contradictory statement in an affidavit is a "sham," courts in this circuit "examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007). Only when the changed testimony is "incredible and unexplained" may courts disregard the affidavit, because when the change is "plausible and 'the party offers a suitable explanation . . . ,'" the fact of contradiction "affects only [the testimony's] credibility, not its admissibility." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (quoting

---

[7] At least two other circuits appear to also construe Rule 30(e) consistently with the sham affidavit rule as applied in those circuits. *See Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1282 (10th Cir. 2003) (declining to treat Rule 30(e) corrections any differently than the content of a sham affidavit); *Hambleton Bros. Lumber v. Balkin Enters.*, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) (allowing corrections "in form or substance" but not "changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment"). The circuits are inconsistent in how they apply the sham affidavit rule. Collin J. Cox, Note, *Reconsidering the Sham Affidavit Doctrine*, 50 Duke L.J. 261, 263 (2000). According to the commentator, "while the Second Circuit presumes that an offsetting affidavit contradicting previous deposition testimony is a sham, the Fifth Circuit generally considers the contexts in which offsetting affidavits are submitted." *Id. See also EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 270 (3d Cir. 2010) (explaining that the doctrine permits consideration of even contradictory changes when "sufficiently persuasive reasons are given," because not all contradictory changes are necessarily "shams").

*Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001)). In this regard, the Seventh Circuit has observed that the Ninth and Tenth Circuits require district courts to "make a factual determination that the contradiction is actually a 'sham'" before disregarding it when deciding a motion for summary judgment. *Bank of Ill.*, 75 F.3d at 1169 n. 10 (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) and *Durtsche v. Am. Colloid Co.*, 958 F.2d 1007, 1010 n.2 (10th Cir. 1992)). The court then explained:

> [A]lthough we have not required such an explicit finding [that a contradiction is a "sham"], our cases make clear that the general rule does not apply to every instance when a later affidavit contradicts prior sworn testimony . . . [but] only to cases in which the statements are inherently inconsistent and in which the contradiction is not the result of an honest discrepancy or newly discovered evidence.

*Id.*

What these analogous sham affidavit cases demonstrate is that courts ordinarily must defer to juries to resolve factual disputes and decide the credibility of witnesses who change their testimony after a deposition. It is only when a court is resolving a summary judgment motion that it is empowered to disregard contradictory testimony—whether offered in an affidavit or errata sheet—based on its finding from all the circumstances that the factual dispute stemming from the change is a "sham." As a result, there is no reason for a party to file a motion to strike changes in an errata sheet—or a court to consider such a motion—unless and until a party seeks summary judgment. If no party moves for summary judgment, all changes in testimony—even contradictory ones—should be resolved by the jury, just as they are when a witness gives contradictory testimony at trial. Moreover, if a motion for summary judgment is

11

filed but the contradictory changes on an errata sheet are clearly immaterial to that motion, there is no apparent need or justification for a court usurping the jury's role by passing judgment on the genuineness of such changes.

It is also worth noting that to the extent a court examines a change in an errata sheet in connection with a summary judgment motion and allows it, this ruling is of no consequence if the case proceeds to trial. Subject to the rules of evidence, the jury is permitted to hear the original answer, the change, and the reasons for the change and decide—in the context of all the other evidence—whether to credit either answer and what weight to assign it. *See Thorn*, 207 F.3d at 389 ("fortunately the rule requires that the original transcript be retained . . . so that the trier of fact can evaluate the honesty of the alteration."); *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) (holding that the district court was correct to make part of the record a deponent's changed answers, along with original testimony); *Lugtig*, 89 F.R.D. at 641 ("The original answer to the deposition questions will remain part of the record and can be read at the trial. . . . 'the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony.'") (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Proc.* § 2118); *see also* A. Darby Dickerson, *Deposition Dilemmas: Vexatious Scheduling and Errata Sheets,* 12 Geo. J. Legal Ethics 1, 60 (1998) (arguing that Rule 30(e) permits "opposing counsel, at her choosing, to introduce both versions to the jury").

Even were a court to "strike" a contradictory answer by disregarding it when considering summary judgment, this too is of no practical consequence at trial. Such a ruling would in no way foreclose a witness from testifying consistently with what was

written in the errata sheet subject, of course, to the Rules of Evidence. As always, the witness could be impeached with the contradictory deposition testimony and, on redirect examination, could explain the reason for the change and when he made it. In other words, the cross-examiner could not unfairly suggest to the jury that there was a long passage of time between the original answer and the change and try to attribute the change to memory lapse.

In sum, it is only in the context of summary judgment that courts are to scrutinize changes in a witness's deposition testimony to determine whether a change is contradictory and creates a sham factual dispute that should be disregarded. If a case proceeds to trial, it is up to the jury to hear the testimony of the witness and decide whether any contradictory changes are credible.

### III. Challenges to Mrs. Arce's Errata Sheet Changes

With these parameters in mind, the Court turns to the errata sheet changes made by Mrs. Arce. As noted, she was deposed on June 29, 2015. Afterwards, she changed her answers to sixty-seven questions, most often by providing much longer answers with additional information that often was not responsive to the question. The reason given for the vast majority of the 67 changes was that she "did not finish" her answer during the deposition, though the transcript does not reflect that she was interrupted and prevented from doing so. Three months before filing for summary judgment, the CTA moved to strike all sixty-seven changes to the deposition testimony. (Doc. 132). For reasons discussed above, the CTA should have taken a more targeted approach, challenging only the changes that it believes may bear on summary judgment. Moreover and as Plaintiff correctly points out, the CTA's motion discusses or cites "[b]y

way of brief example" only eleven of Mrs. Arce's sixty-seven changes. (Docs. 132, at 3; 137, at 3-4). Plaintiff thus contends that the CTA did not "tak[e] the time to point out the irregularity" with each of the sixty-seven changes and instead opted to "cherry-pick" the "most egregious" changes in attempt to mislead the Court. (Doc. 137, at 3-4). He also raises issue with the CTA's omission of the whole transcript in its motion exhibits, as he believes the whole transcript provides crucial context to whether a change is, in fact, contradictory. (*Id.*).

The Court agrees that the CTA must articulate specific arguments for each of the changes, and it would be improper to strike all sixty-seven changes simply because a handful may be impermissible. It is not sufficient to state in a conclusory manner that all sixty-seven are contradictory on the expectation the Court will wade through the morass of pages unaided by specific arguments. In addition, as to the eleven changes that were specifically addressed, the CTA did not provide the necessary context and analysis of whether the change created not only a contradiction but a sham factual dispute for purposes of summary judgment.

Although the CTA offered to file a supplemental brief addressing the fifty-seven errata changes that were not discussed in the motion, the Court declines this offer given the recently-filed summary judgment motion and likely irrelevance of many of the changes to that motion. Instead, the Court denies without prejudice the motion to strike in its entirety. To the extent that the CTA believes that any of the sixty-seven changes bear on its summary judgment motion and Plaintiff's opposition thereto, the CTA may file a new motion to strike such changes, explaining why each change is contradictory and creates a sham factual dispute that must be disregarded.

14

**CONCLUSION**

For the reasons stated above, the CTA's motion to strike the sixty-seven errata changes (Doc. 132) is denied without prejudice.

ENTER:

Dated: November 30, 2015

_____
SHEILA FINNEGAN
United States Magistrate Judge